UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDSSEY M BESHAI TORRES PPA of JT, a minor, )<br>    Plaintiff   )<br>   )<br>v.   )<br>   )<br>   )<br>OFFICER JOHN R. ALERS, FORMER OFFICER   )<br>PAUL P. MCARTHY, and the CITY OF   )<br>WORCESTER,   )<br>    Defendants   ) | No. 4:20-cv-40115-TSH |

    Now comes the Plaintiff and she respectfully requests this Honorable Court to compel the production of documents he has requested of the Defendant City of Worcester that are relevant to her claims for officer and municipal liability in this excessive force case, documents that are not privileged or to the degree that they are privileged are discoverable under an appropriate protective order.

    In support of the motion Plaintiff states as follows:

    This is an action in civil rights and tort to recover for severe physical and emotional injury two Worcester police officers inflicted on a 10-year old autistic boy. His mother had called for an ambulance after he threw a tantrum and hurled a plastic beverage container inside her car. The police knew JT was autistic. He'd stayed up the night before and she believed something was wrong with his medications. When the officers got there, shortly before the ambulance arrived, the child, according to Mrs. Beshai Torres had calmed down and was sitting quietly in his mother's car. The officers this was a medical call. But when the child responded to their queries by tossing a small bag of potato chips from the car, without further ado the officers dragged him from the vehicle, and put him face down to the pavement with knees on his neck and legs. When his mother begged them to let her take over and try to calm the child they told

1

her to back off, and as the child screamed in pain she watched helplessly as they twisted the right arm into an unnatural position during handcuffing and fractured his elbow, an x-ray showed a lateral epicondyle avulsion fracture with soft tissue swelling and joint effusion and JT was hospitalized and had surgery.

Medical records from UMass show he was forcefully removed from his car after there was an altercation between him and a police officer. Records from the hospital . He resisted leaving the car and was pulled by his arm. He had immediate pain.

The City conducted an internal investigation. During the investigation Mrs. Beshai Torres told police her son was dragged out of the car and that he suffered an injury while being handcuffed.  The investigation exonerated the officers of any wrongdoing. "If we analyze the statements from each party we can surmise this; there was an incident that involved officers handcuffing Mr. _____. Ms. Beshai states Mr. _____ was pulled from the vehicle. Officer Alers' recollection has Mr. _____running from the vehicle towards the street which is clearly in contention with Ms. Beshai's recollection. There is no video to clearly prove whose memory is more accurate. They can all agree that Mr. _____was brought to the ground and handcuffed. The question is was it necessary to restrain Mr. _____? If so, how much force was required?

Ms. Beshai contends that her son was calm. Officer Alers disagrees. Again, there is no video to clearly prove or disprove the memories of Ms. Beshai and Officer Alers. We can agree that the police force used rose to a level 3 on the force continuum. A compliance technique, a "take down" was utilized. Could Mr. Torres have been injured during the take down or the handcuffing? Yes. Was there unnecessary force used? We can neither prove nor disprove the allegation with conflicting statements, no witness testimony, and no video. Both officers were exonerated of any wrongdoing. See Ex. 3, investigation report.

In compliance with LR 37.1 counsel for the parties (Robert Scott for Plaintiff, Wendy Quinn and Jared Madison for defendants) conferred by telephone on February 9, 2022. The following issues are unresolved.

DISPUTES AS TO DISCLOSURE OF DOCUMENTS NOT PRODUCED

The City states objections to Requests 1, 3, 4, 5, 6, 7, 10, 15, 16, 17, 18, and 19 without stating as to each objection whether or not any responsive documents have been withheld pursuant to that objection as FRCP 34(b)(2)(C) requires. ("An objection must state whether any responsive materials are being withheld on the basis of that objection.")   To date the requested clarifications have not been provided.  Plaintiff respectfully requests the Court to allow further motion practice as to these responses once the clarification has been received.

The response to Request No. 19 is especially problematic in this regard.  The City states that documents have been documents produced "with appropriate redactions in accordance with the above objections."  The response states at least six distinct objections and does not identify which one or ones are the basis for any redaction, contrary to Rule 34(b)(2)(C).

The City's compliance with the rule is limited by the statement that notwithstanding and without waiving the objections "and construing the request for 'disciplinary records' as for documents evidencing a complaint and internal investigation regarding the officers' use of force, ten years prior to the date of the alleged incident on September 25, 2017, no information has been withheld pursuant to the objections." By the terms of this statement the representation that responsive documents were not withheld pursuant to objection applies only to the City's stated limitations as to time and scope, not to the request as written. The statement does not reveal whether pursuant to objection any of the following categories of documents responsive to the request were withheld:

3

Documents dating from after the incident date;

Documents dating from more than 10 years before the incident;

Documents dealing with subjects other than the use of force;

Documents concerning complaints where there was no internal investigation;

Documents concerning internal investigation not arising from a complaint.

Plaintiff submits that responsive documents from after the incident date should be produced because post-event evidence is relevant in the context of *Monell* and supervisory claims. (See argument.) Responding to the City's request for clarification as to specific documents sought in this request, Plaintiff's counsel on February 14, 2022, advised that it encompasses any commander's, Bureau of Professional Standards, or other WPD investigation of and any citizen complaints concerning: use of force; untruthful, inaccurate, incomplete or untimely reporting; failure to report; unbecoming or criminal conduct as well as fitness for duty reports, last chance agreements, and records of suspensions. To date no further response to Request No. 19 has been received.

DISPUTE AS TO PRIVILEGE

When questioned about former Officer McCarthy Chief Sargent stated at his deposition that McCarthy's police career was affected by "some health issues." When counsel enquired as to whether this included mental health issues the City's counsel instructed him not to answer. After some further questioning and colloquy in which Plaintiff's counsel offered to have the testimony subject to protective order, the City's counsel advised that due to HIPPA "without a court order or some other -- I'm sorry. But the chief cannot testify about that." Exhibit 2, deposition of Steven Sargent at 145:22 – 149:17.

ARGUMENT

A municipality may liable for violations of citizens' constitutional rights caused by municipal policy or custom that is adopted or maintained with deliberate indifference or gross negligence as to such violations. *Monell v. Department of Social Services,* 436 U.S. 658, (1978). Liability may arise from a formally adopted written policy or regulation or by unwritten practice or custom "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 690. (citation and internal quotation marks omitted.) Custom, which the Plaintiff relies upon in this case, may be shown by knowledge and acquiescence of the policymaker in the unconstitutional practice. *Fletcher v. O'Donnell,* 867 F.2d 791, 793 (3d Cir. 1989), cert. denied, 492 U.S. 919 (1989).

Identifying the practice or practices involved, the nature of the violations they cause, identifying the actual policymaker or policymakers and proving the circumstances that demonstrate policymaker knowledge, or deliberate ignorance, of the unconstitutional practice require discovery going far beyond information about the actors who were the agents of the harm. Discovery in a case such as this, involving a claim of excessive force by an officer, implicates not only alleged police misconduct in the use of force, reporting of the use of force untruthfully or not at all, other untruthful reporting designed to conceal the circumstances, and a pattern of investigation of alleged misconduct employing a variety of contrivances to produce a benign outcome – one finding the misconduct did not occur or could not be proven. A plaintiff must also prove causation, that a given custom or set of customs are not only constitutionally deficient but actually caused the injury. A plaintiff must uncover evidence that "if believed, would be sufficient to demonstrate a pattern of failures to train and discipline officers whose

conduct falls short of appropriate standards." *Hutchins v. McKay*, 285, 429 F.Supp.3d 420 (D. Mass. 2018).

Plaintiff submits the defendants observe a concept of relevance that, if it prevails, makes it impossible to prove *Monell* liability. Plaintiff seeks discovery of the systems of the WPD for receiving and processing citizen complaints. He contends the WPD process is largely a sham, that discounts the testimony of civilians and employs a vague standard of proof to show misconduct. This requires extensive discovery of the complaint process. "The investigative process must be real. It must have some teeth. It must answer to the citizen by providing at least a rudimentary chance of redress when injustice is done." *Beck v. City of Pittsburgh*, 89 F.3d 966, 974-75 (3d Cir. 1996). This discovery is vital to proof of causation. *Clark v. Pena*, 2000 WL 35427177, at *9 (W.D. Mich. April 28, 2000) (police department's ineffective citizen-complaint procedures could have led officers to use excessive force); *Comfort v. Town of Pittsfield*, 924 F. Supp. 1219, 1233 (D. Me. 1996) (police chief's management style created an atmosphere in which officers believed that he would not punish their use of excessive force). Although the City contends allegations of misconduct occurring after the subject incident are irrelevant, they "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force." *Beck* at 972.

Discovery in *Monell* cases is not limited to the history of the alleged offenders, but to the incidents of others on the force as this is probative both of custom and causation. *Torres v. Kuzniasz,* 936 F. Supp 1201 (1996) (investigative files of individuals not parties to the current case are discoverable). In *Spell v. McDaniel*, 591 F. Supp 1090 (ED NC 1984), the court ruled that discovery requests pertaining to the incident itself, the defendant officer's prior conduct in the police department, all other reported incidents of police abuse in the city for a period of two

years prior to the incident involved, and police department rules and regulations regarding the use of force were all relevant and not subject to executive, work product, attorney-client, or any other state-created privileges. The documents not related directly to the incident complained of were relevant on the issues of municipal liability.

Where a police department sends an officer for mental health treatment to assure fitness for duty, the report of that activity is discoverable. *See Scott v. Edinburg,* 101 F.Supp.2d 1017 (N.D.Ill. 200); *Barrett v.Vojtas*, 182 F.R.D. 177 (W.D.Pa. 1998); *Cf. Speaker v. County of San Bernardino*, 82 F.Supp.2d 1105 (C.D.Cal. 2000).

WHEREFORE, Plaintiff respectfully requests that the motion be allowed and that upon review of her discovery requests the Court require production of documents not produced, disclosure of responsive documents not disclosed and that the depositions of Manager Augustus, Chief Sargent and Officer Kubiak be reconvened for answers to lines of questions previously refused.

        Respectfully submitted,
        Plaintiff
        By her attorneys,

        /s/ *Robert A. Scott*
        Hector E. Pineiro, BBO # 555315
        Robert A. Scott, BBO # 648740
        Law Office of Hector E. Pineiro, P.C.
        807 Main Street
        Worcester, MA 01610
        T. (508) 770-0600
        P. (508) 770-1300
        robin@pineirolegal.com

DATED: February 28, 2022